**Nos. 24-1720, 24-1848**

# In the
# United States Court of Appeals
## for the Sixth Circuit

TINA MCPHERSON,

*Plaintiff-Appellant/Cross-Appellee,*

v.

SUBURBAN ANN ARBOR, LLC,

*Defendant-Appellee/Cross-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit, No. 2:20-cv-13152.
The Honorable **David M. Lawson**, Judge Presiding.

## BRIEF OF PLAINTIFF-APPELLANT/CROSS-APPELLEE

Ian B. Lyngklip
LYNGKLIP & ASSOCIATES CONSUMER LAW
CENTER, PLC
13751 W. 11 Mile
Oak Park, MI 48237
(248) 208-8864
Ian@ConsumerLawyers.com

Duran L. Keller
KELLER LAW
P.O. Box 1248
Lafayette, IN 47902
(765) 444-9202
duran@keller.law

*Attorneys for Plaintiff-Appellant/Cross-Appellee*
*Tina McPherson*

 COUNSEL PRESS · (866) 703-9373

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-1720 | 24-1848          Case Name: McPherson v Suburban Ann Arbor

Name of counsel: Ian B. Lyngklip

Pursuant to 6th Cir. R. 26.1, Tina Mcpherson
*Name of Party*
makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ September 11, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Ian B. Lyngklip

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Table of Contents

Corporate Disclosure ................................................................. i

Table Of Contents ..................................................................... ii

Table Of Authorities ................................................................. iii

Statement In Support of Oral Argument ........................................ 1

Jurisdictional Statement ............................................................ 2

Statement of the Issues on Appeal .............................................. 3

   I.  Refusal To Permit Statutory Damages Under Michigan Law .............. 3

  II.  Reduction Of Lodestar By Failing To Consider Evidence In Accordance With Fee Shifting Framework ......................................... 4

Statement Of The Case ............................................................... 4

   I.  Factual Background ......................................................... 6

  II.  Relevant Procedural Background ...................................... 8

Summary Of Argument ............................................................. 10

Law & Argument ..................................................................... 12

   I.  The Court Erred In Aggregating And Preemptively Denying Statutory Damages Under The Wrong Constitutional Standard. ...................... 12

     A.  Standard of Review ...................................................... 12

     B.  Argument ................................................................. 12

  II.  The District Court Erroneously Refused To Consider And Give Weight To Factors And Evidence Supporting Ms. McPherson's Requested Rates For Her Attorneys. ................................................ 18

     A.  Standard of Review ...................................................... 18

     B.  Argument ................................................................. 20

Conclusion ............................................................................. 42

Certificate of Compliance .......................................................... 44

Certificate of Service ............................................................... 45

Designation of Documents Relevant to Appeal

# Table Of Authorities

## Cases

*Alken-Ziegler, Inc. v. Hague*, 283 Mich. App. 99 (2009) .......................... 14

*B&G Mining, Inc. v. Dir., OWCP,* 522 F.3d 657 (6th Cir. 2008) .... 27, 28, 29

*Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161 (N.D. Iowa 2003) ....... 46

*Ballatore v. Comm'r of Soc. Sec.*, Civil Action No. 11-CV-15335, 2015 U.S. Dist. LEXIS 134547 (E.D. Mich. Oct. 2, 2015) ....................................... 30

*Ballatore v. Comm'r of Soc. Sec.*, No. 11-15335, 2015 U.S. Dist. LEXIS 135402 (E.D. Mich. Aug. 5, 2015) .................................................................. 30

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005) ....................... 27

*Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003) ........................... 26

*Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648 (3d Cir. 1986).. 39

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................. 28, 39

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) ....... 12, 18, 19, 20

*Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160 (11th Cir. 2010) ......... 13

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ......... 26, 44

*Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012) ..... 19

*Carson v. Billings Police Dep't*, 470 F.3d 889 (9th Cir. 2006) ................... 41

*Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243 (10th Cir. 1998) ...................................................................................................... 40

*Caviness v. Comm'r of Soc. Sec.*, 681 F. App'x 453 (6th Cir. 2017) ............ 40

*CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314 (5th Cir. 2023) .............. 40

*Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir. 1982) .................. 38, 46

*Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021) ............ 14

*Dee v. Borough of Dunmore*, 548 F. App'x 58 (3d Cir. 2013) ..................... 44

*Dillard v. City of Greensboro*, 213 F.3d 1347 (11th Cir. 2000) .................. 40

*Dixie Fuel Co. v. Callahan*, 136 F. Supp. 2d 659 (E.D. Ky. 2001) .............. 28

*Doucette v. Comm'r of Soc. Sec.*, 13 F.4th 484 (6th Cir. 2021) ............ 25, 39

*Dowling v. Litton Loan Serv. LP*, 320 F. App'x 442 (6th Cir. 2009).......... 29

*E. Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561 (4th Cir. 2013) ...... 39

*Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346 (3d Cir. 2001) ................................................................................................ 24, 26

*Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204 (2d Cir. 2005) ............... 39

*Farrar v. Hobby*, 506 U.S. 103 (1992) ........................................................ 31

*Foley v. Lowell*, 948 F.2d 10 (1st Cir. 1991) ............................................. 39

*Gates v. Comstock*, 113 Mich. 127 (1897) ................................................. 15

*Geier v. Sundquist,* 372 F.3d 784 (6th Cir. 2004) ............................... passim

*Glover v. Johnson*, 934 F.2d 703 (6th Cir. 1991) .................................. 28, 37

*Gonter v. Hunt Valve Co.*, 510 F.3d 610 (6th Cir. 2007) ..................... passim

*Hadix v. Johnson*, 65 F.3d 532 (6th Cir. 1995) ..................................... 28, 29

*Hardy v. Berryhill*, No. 18-10743, 2020 U.S. Dist. LEXIS 129178 (E.D. Mich. July 22, 2020) ................................................................... 30

*Hunt v. Hadden,* 127 F. Supp. 3d 780 (E.D. Mich. 2015) ................. 15, 16, 17

*Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531 (6th Cir. 2008) .... 21, 23

*In re Walker*, No. 22-31612 JDA, 2024 Bankr. LEXIS 2125 (Bankr. E.D. Mich. Sep. 12, 2024) ....................................................... 10, 46

*Jackson v. Bulk AG Innovations, LLC*, 342 Mich. App. 19 (2022) ............. 17

*Jeffboat, LLC, v. Dir., Off. of Workers' Comp. Programs*, 553 F.3d 487 (7th Cir. 2009) ...................................................................... 42

*JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103 (6th Cir. 2019). ..... 4

*Kelly v. Fine*, 354 Mich. 384 (1958) ..................................................... 14, 15

*Lane v. Ruhl*, 103 Mich. 38 (1894) ............................................................ 14

*Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020) ...................... 49

*Louisville Black Police Officers Organization, Inc. v. City of Louisville*, 700 F.2d 268 (6th Cir. 1983) .............................................................. 42

*Maddox v. Lodestar Energy, Inc.*, 762 F. App'x 269 (6th Cir. 2019) ......... 27

*Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738 (7th Cir. 2003) ...... 38, 45

*Miller v. Suburban Mobility Auth. for Reg'l Transp.*, No. 20-11122, 2024 U.S. Dist. LEXIS 99491 (E.D. Mich. May 9, 2024) .................................. 10

*Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274 (1989) ............................ 27

*Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986) ........................... 23

iv

*O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050 (D.N.M. 2018) .................................................................. 45

*People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307 (7th Cir. 1996) .............................................................................. 25, 48

*Perdue v. Kenny A.*, 559 U.S. 542 (2010) ........................................ 23, 41, 47

*Pollinator Stewardship Council v. United States EPA*, No. 13-72346, 2017 U.S. App. LEXIS 13343 (9th Cir. June 27, 2017) ............................... 22, 38

*Powell v. C.I.R.*, 891 F.2d 1167 (5th Cir. 1990) .................................... 40

*Pressley v. Haeger*, 977 F.2d 295 (7th Cir. 1992) .................................. 24

*Roberts v. City & Cty. of Honolulu*, 938 F.3d 1020 (9th Cir. 2019) ............ 40

*Robertson v. Simpson*, 624 F.3d 781 (6th Cir. 2010) .............................. 14

*Russell v. Foglio*, 160 Cal. App. 4th 653, 73 Cal. Rptr. 3d 87 (2008) ......... 45

*Singleton v. Smith*, 241 F.3d 534 (6th Cir. 2001) .................................. 22

*Smith v. Manausa*, 535 F.2d 353 (6th Cir. 1976) .................................. 13

*Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67 (1st Cir. 2013) ......... 19

*Sottoriva v. Claps*, 617 F.3d 971 (7th Cir. 2010) .................................. 41

*Sussman v. Patterson*, 108 F.3d 1206 (10th Cir. 1997) ......................... 26, 44

*Two Plus Two Publ'g, LLC v. Jacknames.com*, 572 F. App'x 466 (9th Cir. 2014) ............................................................................................ 20

*Tyson v. Sterling Rental, Inc.*, 836 F.3d 571 (6th Cir. 2016) ....................... 9

*United States ex rel. Keshner v. Nursing Pers. Home Care*, 794 F.3d 232 (2d Cir. 2015) .................................................................................... 24

*United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) ............................................................................................ 25

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:08-CV-605, 2010 U.S. Dist. LEXIS 42357 (N.D. Ohio Apr. 30, 2010) ...................................... 45

*Velez v. Wynne*, 220 Fed. Appx. 512 (9th Cir. Jan. 29, 2007) ................... 25

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, (6th Cir. 2013) ........... 28, 29

*Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031 (3rd Cir.1996) .................................................................................. 24

*Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604 (6th Cir. 2004) ............................................................................................ 23

*Zomba Enters. v. Panorama Records, Inc.*,
    491 F.3d 574 (6th Cir. 2007)............................................................. 19, 20

## STATUTES

28 U.S.C. § 1291............................................................................................. 2

28 U.S.C. § 1331............................................................................................. 2

28 U.S.C. § 1367............................................................................................. 2

Equal Credit Opportunity Act, 15 U.S.C. § 1691 - 1691f........................... 2, 4

Fair Credit Reporting Act, 15 U.S.C. § 1681 – 1681x ................................ 2, 8

Michigan Credit Reform Act, M.C.L. § 445, 1851 -1864........................... 4, 8

Michigan Revised Judicature Act, M.C.L. § 600.2919a .................... 4, 13, 17

Truth In Lending Act, 15 U.S.C. §§ 1601 – 1677f....................................... 2, 4

Uniform Commercial Code, M.C.L. § 440.9101 – 440-9809 ....................... 4

## COURT RULES

Fed. R. Civ. P. 50 .......................................................................................... 2

Fed. R. Civ. P. 54 .......................................................................................... 3

<u>**STATEMENT IN SUPPORT OF ORAL ARGUMENT**</u>

The Appellant Tina McPherson requests that this Court grant oral argument.

Ms. McPherson believes that the Court would benefit from oral argument to assist in the decision and to answer questions concerning the appropriate test for statutory damages under the Due Process Clause and the relationship of statutory damages to the due process test for punitive damages.

As to the fee issue, argument would likely assist the Court in understanding the import of the record evidence on the district court's determination of the appropriate hourly rate.

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 based upon claims presented by Ms. McPherson under the Truth In Lending Act (TILA), 15 U.S.C. §§ 1601 – 1677f, Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 – 1691f, and Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 – 1681x. The district court had supplemental jurisdiction over Ms. McPherson's state law claims under 28 U.S.C. § 1367.

This Court has jurisdiction over the district court's final amended judgment (*Amended Judgment*, R. 200, PageID. 5298) and the order resolving Ms. McPherson's claims for attorney's fees (*Opinion and Order Granting In Part Motion for Attorney's Fees*, R. 199, PageID. 5286-5297). 28 U.S.C. § 1291. The relevant filing dates follow.

The jury rendered its verdict on November 3, 2023 (*Jury Verdict*, R. 150, PageID. 3024 - 3026). The district court entered judgment on that verdict on February 28, 2024 (Judgment, R. 174, PageID. 4018). Defendant Suburban Ann Arbor, LLC (Suburban) timely requested remittitur under Fed. R. Civ. P. 50 on March 22, 2024 (*Motion for New Trial and Remittitur*, R. 175, PageID. 4019-4048). Ms. McPherson timely requested fees and nontaxable costs on April 29, 2024 (*Motion for Attorney's Fees*, R. 189, PageID. 4154 - 5162). The district court resolved both requests on July 31,

2024, and entered its amended final judgment on July 31, 2024. (*Amended Judgment*, R. 200, PageID. 5298). Ms. McPherson filed her timely notice of appeal on August 26, 2024 (Notice of Appeal, R. 201, PageID. 5299 - 5301).

The district court's order granting Ms. McPherson's request granting fees (*Opinion and Order Granting in Part Motion for Attorney's Fees*, R. 199, PageID. 5286 - 5297) and its order resolving remittitur (*Opinion and Oder Denying Motion for New Trial and Remittitur*, R. 198, PageID. 5274-5285) on July 31, 2024, resolved the last claims in this case. Fed. R. Civ. P. 54(d). This appeal, therefore, falls within this Court's jurisdiction over final orders. *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1105 (6th Cir. 2019).

<u>**STATEMENT OF THE ISSUES ON APPEAL**</u>

## I. <u>Refusal To Permit Statutory Damages Under Michigan Law</u>

The jury found that Suburban willfully violated the Michigan Revised Judicature Act (RJA), M.C.L. § 600.2919a and Michigan Regulation of Collection Practices Act (MRPCA), M.C.L. §§ 445.251 – 445.258, each of which permitted the court to award statutory damages in multiples of any actual damages. But the district court refused to award statutory damages under either statute, reasoning that such an award would render any such amount excessive under the Due Process Clause of the U.S. Constitution. But, under controlling authority, statutory damages must be reviewed under a

separate standard of the Due Process Clause which evaluates whether the penalty prescribed is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable. Did the district court err in failing to apply the appropriate due process standard to the evaluation of statutory damages?

## II.    <u>Reduction Of Lodestar By Failing To Consider Evidence In Accordance With Fee Shifting Framework</u>

Ms. McPherson offered unopposed evidence of counsels' rates and the insufficiency of past awards to attract competent counsel to cases like Ms. McPherson's. The district court nonetheless relied on past fee assessments and overlooked the evidence proffered by Ms. McPherson. Did the district court abuse its discretion by relying on stale fee decisions rather than on Ms. McPherson's proffered and unopposed evidence?

<u>STATEMENT OF THE CASE</u>

On December 1, 2020, Ms. McPherson sued Suburban, a franchise automobile dealer. She alleged federal claims for violating TILA, FCRA, and ECOA, and state claims under MRCPA, Michigan Motor Vehicle Sales Finance Act (MMVSFA), M.C.L. §§ 492.101 -141, MCRA, RJA, and Article 9 of the Uniform Commercial Code (U.C.C.), M.C.L. §§ 440.9101 – 440.9809.

The district court conducted a jury trial between October 31, 2024, and November 3, 2024. (*Minute Entry*, 10/31/24, 11/1/24; 11/2/24; and 11/3/24. *Trial Vol. 1*, R. 157, PageID. 3174 - 3373; *Trial Vol.2*, R. 158 PageID. 3374 - 2547, *Trial Vol. 3*, R. 159, PageID. 3548 – 3778; and *Trial Vol 4.*, R. 160, PageID. 3779-3901). The jury returned a verdict in favor of Ms. McPherson on all claims presented except for the TILA. Ultimately, the jury assessed $15,000 in actual damages, answered a special interrogatory fixing the value of the converted property at $23,000, assessed punitive damages of $350,000, and found that Suburban had willfully violated RJA and MRCPA. (*Jury Verdict*, R. 150, PageID.3024.)

Following entry of the verdict, the parties briefed the issue of statutory damages under RJA and MRCPA. (*Motion for Enhanced Damages*, R. 155, PageID.3035-3059. *Response to Motion for Enhanced Damages* R. 161, PageID.3902-3915.) The district court declined to assess any statutory damages (*Opinion and Order Denying Enhanced Damages*, R. 173, PageID.4004-4017) and entered judgment in favor of Ms. McPherson in the amount of $394,433.75 on February 28, 2024. (*Judgment*, R. 174, PageID.4018.)

On March 22, 2024, Suburban filed its motion for new trial and remittitur. (*Motion for New Trial and Remittitur*, R. 175, PageID.4019-

4048.) On April 29, 2024, Ms. McPherson moved for attorney's fees and non-taxable costs. (*Motion for Attorney's Fees and Non-Taxable Costs*, R.189, PageID.4154-4181.) After argument, the district court denied Suburban's request for remittitur (*Order Denying New Trial and Remittitur*, R. 198, PageID.5274-5285) and partially granted attorneys' fees and expenses in the amount of $430,207.61. (*Order Granting In Party Motion for Attorney's Fees*, R. 199, PageID.5286-5297.) The Court then issued an amended judgment comprising the jury's verdict and the Court's assessment of fees and expenses. (*Amended Judgment*, R. 200, PageID.5298.)

## I.    <u>Factual Background</u>

The following facts were adduced at trial. On July 9, 2020, Ms. McPherson purchased a used Dodge Durango from Suburban. After the parties executed the sale papers — including a title transfer, registration, purchase agreement and retail installment sales contract — Suburban accepted Ms. McPherson's down payment and delivered the vehicle. After completing her purchase, Ms. McPherson expected, but did not receive, payment instructions or a coupon book.

When Ms. McPherson called the finance company to make payments, it had no record of her transaction. She then contacted Suburban, whose staff

told her to come back to the dealership and either sign new papers or return the vehicle. At that time Suburban told Ms. McPherson that a new deal on better terms was ready for her signature. But Suburban had never received approval for any deal from any finance company. And even though Suburban had already signed a completed, irrevocable financing deal with Ms. McPherson, Suburban's finance manager continued to pull her credit report in hopes of finding the approved financing that it had told Ms. McPherson it had already received.

When Ms. McPherson implored Suburban to honor its deal and refused to sign more paperwork, Suburban hired a towing company to repossess the vehicle. On October 17, 2020, Suburban's repossession agent — following Suburban's instructions and policy and over her objections — took Ms. McPherson's car while her family and neighbors looked on.

Ms. McPherson then sued Suburban for this common bait and switch scheme,[1] known in the industry as a "Spot Delivery."[2]

---

[1] *Murray Brown Letter 1989*, R. 92-6, PageID.1913; *Bulletin 2013-08-CF*, R. 92.7, PageID. 1914-1915; *Secretary of State 2013 Dealer Manual*, R. 92-8, PageID. 1921; *Consumer Information 4-11-00*, R. 92-9, PageID. 1939.

[2] The nature of the "Spot Delivery" scheme is set forth in the complaint (*Complaint*, R.1 at ¶9-29, PageID. 3-9). This same scheme was before this Court in *Tyson v. Sterling Rental, Inc.*, 836 F.3d 571 (6th Cir. 2016)).

## II.    Relevant Procedural Background

The district court instructed the jury on Ms. McPherson's claims under MRCPA and RJA and provided a verdict form asking whether Suburban had violated these statutes and whether it had done so willfully. The parties agreed that in the event of a finding of a willful violation, the district court would determine the amount of any statutory damages. The jury rendered its verdict in favor of Ms. McPherson on both of these claims, finding willful violations of both RJA and MRCPA (*Jury Verdict*, R. 150, PageID. 3024 - 3026.)

Following the jury's verdict, Ms. McPherson requested the district court to assess statutory damages under the multiple damage provisions of the RJA and MRCPA. (*Motion for Enhanced Damages*, R. 155, PageID. 3035 - 3059.) Suburban opposed any statutory damages, primarily arguing that it had not known at the time that its actions violated Michigan law and mentioning in passing constitutional limits on punitive damages. (*Response to Motion for Enhanced Damages*, R. 161, pp. PageID.3902 -.3915).[3] The district court focused its analysis on due process and based on that limitation, found that any statutory damages might render the resulting

---

[3] The Court summarized both parties' arguments on the statutory damage issue on page 4-5 of its ruling. (*Opinion and Order Denying Enhanced Damages*, R. 173, PageID. 4007-4008.)

verdict constitutionally excessive. To avoid the perceived result of unconstitutionality and exercising what it believed to be its proper discretion, the district court refused to grant any statutory damages.( *Opinion and Order Denying Enhanced Damages,* R. 173, PageID. 4007)

Following entry of the judgment, Ms. McPherson moved for statutory attorney fees under the fee shifting provisions of FCRA, ECOA, MRCPA, and MCRA. (*Motion for Attorney's Fees*, R. 189, PageID. 4154-5161.) Ms. McPherson requested fees at the rate of $600 per hour for attorneys Lyngklip and Keller.[4] Suburban's response to the fee motion provided no countering affidavits or evidence. (*Response to Motion for Attorney's Fees*, R. 193, PageID. 5166-5233.)  The district court denied the motion for fees in part, setting rates of $450 per hour for attorneys Lyngklip and Keller -- representing a 25% reduction in the requested rate – and $300 an hour for Attorney Bolos (*Opinion and Order Granting In Part Attorney's Fees*, R. 199, PageID. 5286-5297), $350 per hour *less* than she received from another Eastern District of Michigan court shortly after the order at issue.

---

[4] One bankruptcy court from the Eastern District of Michigan remarked that it routinely sees rates of between $800-$1,000 per hour for business litigation before the court. *In Re Walker*, ED. MI BK Case No.  22-31612, R. 49, 2024 Bankr. LEXIS 2125 (Sep. 12 2024). In *Miller v. Suburban Mobility Auth. for Reg'l Transp.*, No. 20-11122, 2024 U.S. Dist. LEXIS 99491 (E.D. Mich. May 9, 2024) Judge Drain awarded $600 per hour for an attorney of experience comparable to that of Attorney Lyngklip.

As to statutory damages, the jury and district court agreed that Suburban's violations of RJA and MRCPA were willful, which triggered the imposition of statutory damages pursuant to established Michigan case law. As ruled by the Supreme Court, the only constitutional limitation on the imposition of statutory damages is "where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919). But, the district court refused to assess any statutory damages under RJA or MRCPA, reasoning that any damages under Michigan law would render an aggregated judgment in excess of the due process limits on punitive damages under *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). But as did the Supreme Court, controlling Sixth Circuit authority distinguishes between statutory damages and punitive damages and applies different standards to each. The district court should have considered the correct statutory damages standard: whether the penalty prescribed is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable. The district court erred in applying the due process standard for punitive damages instead of the separate due process standard applicable to Ms. McPherson's statutory damage claim.

As to attorney fees, case law charges district courts with setting fee rates that actually attract — not discourage — capable counsel to accept and prosecute consumer protection cases, and courts must set those rates based on evidence presented to the court before resorting to past fee determinations. Ms. McPherson provided eight unrebutted declarations, along with data and analysis from a nationwide survey of consumer protection attorneys, to support her counsels' rates. The evidence established that attorneys Lyngklip and Keller are unique in the market with exceptional credentials and that past assessments had been insufficient to attract attorneys to bring these cases. Suburban chose not to present any countering evidence. But the district court refused to consider the evidence presented by Ms. McPherson and instead deferred to past fee decisions, along with a fee survey which included non-private attorneys outside of the practice areas at issue here. The district court erred in failing to consider Ms. McPherson's evidence supporting the market rates without providing reasons for rejecting that evidence.

I. **The Court Erred In Aggregating And Preemptively Denying Statutory Damages Under The Wrong Constitutional Standard.**

A. **Standard of Review**

"In a non-jury action a trial court's determination of damages is reviewable only for abuse of discretion." *Smith v. Manausa*, 535 F.2d 353, 354 (6th Cir. 1976). A district court abuses its discretion when it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous. *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 731 (6th Cir. 2021); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

B. **Argument**

Michigan courts have repeatedly confirmed – under several statutory frameworks – that treble damages should be imposed where the defendant acts willfully or knowingly to violate the law. *Kelly v. Fine*, 354 Mich. 384, 387 (1958) (trespass) ("[I]t is enough if it be shown that the trespass was intentional and with knowledge that it was without right"); *Lane v. Ruhl*, 103 Mich. 38, 39, 61 N.W. 347, 347 (1894) ("We have a number of statutes conferring the right to double or treble damages [requiring] the act done

must be willful.") Treble damages "reflect a worthy public policy consideration of punishing dishonest defendants and setting an example for similar wrongdoers." *Alken-Ziegler, Inc. v. Hague*, 283 Mich. App. 99, 104 (2009) (conversion).

In *Hunt v. Hadden*, 127 F. Supp. 3d 780, 784 (E.D. Mich. 2015) (Lawson, J), the court reviewed both national and Michigan jurisprudence to determine what factors would be required for jury instructions on a claim for conversion under RJA. The court concluded that the sole purpose of treble damages under Michigan law is to punish wrongdoers:

> Every Michigan court to consider the issue has found that treble damages under Michigan Compiled Laws § 600.2919a is punitive in the traditional sense, that is, to punish the defendant for wrongdoing.
>
> ...[T]reble damages are intended as a "penalty," not an assessment of actual compensatory damages. In other words, treble damages under this statute "extend[] beyond restoring" a plaintiff "to their original condition" before the act of conversion.... Instead, the purpose of treble damages is "to penalize" the converter.

*Hunt*, 127 F. Supp. 3d at 784 (citations omitted). Thus, *Hunt* concluded that the only finding necessary to support the discretionary award of treble damages is "evidence that the defendants acted willfully or wantonly in converting." *Hunt*, 127 F. Supp. 3d at 786. See also *Gates v. Comstock*, 113 Mich. 127, 130 (1897); *Kelly v. Fine*, 354 Mich. 384, 387 (1958) ("[I]t is

enough if it be shown that the trespass was intentional and with knowledge that it was without right.")

Beyond the willfulness and wrongfulness of conduct, the only other considerations in Michigan law are the express commands that RJA's remedy should be awarded *in addition* to any other remedies (RJA, M.C.L. § 600.2919a) and that multiple damages under the MRCPA, operate similarly as a "civil penalty." M.C.L. § 445.257. Thus, the logic of *Hunt* applies with equal force to the remedy under MRCPA.

Notwithstanding the jury's findings supporting an assessment of multiple damages (i.e. Suburban had willfully violated the RJA and MRCP), the district court refused to assess any damages under either of these prophylactic statutes. Instead, the district court held that that Ms. McPherson had been adequately compensated by the punitive damages assessed by the jury (*Opinion and Order Denying Enhanced Damages*, R. 173 at PageID. 4009-10). But that conclusion undermines the RJA's command to allow damages in addition to any other remedies. M.C.L. § 600.2919a(2). Because Michigan law requires only a finding that such conduct was willful and deserving of punishment (*Hunt*, 127 F. Supp. 3d at 78 (collecting cases) the district court erred in relying on Ms. McPherson's other remedies.

Additionally, the district relied on other irrelevant factors in its statutory analysis, such as whether Suburban had been sufficiently punished ("the jury's punitive damage award vindicated those concerns." *Opinion And Order Denying Enhanced Damages*, R. 173 at PageID. 4009). The court also relied on whether the expected award would be "necessary to achieve a just result" in light of due process concerns. (*Opinion And Order Denying Enhanced Damages*, R. 173 at PageID.4009.) These considerations do not appear in the state statutes. The district court cited no case law allowing these factors to supplant the willfulness – as well as the legislature's command that the award be cumulative – as support for its decision.[5] Thus, the district court was guided by the incorrect legal standard for its statutory analysis.

And while the district court could properly consider excessiveness under the Due Process Clause, the district court incorrectly applied the due process standard applicable to *punitive damages* found in *BMW of North*

---

[5] Neither Suburban nor the district court cited any case where a court refused to award treble damages in the face of a finding of a willful conversion that had violated RJA. In *Jackson v. Bulk AG Innovations, LLC*, 342 Mich. App. 19, 27-28 (2022), cited by the district court, the Michigan Supreme Court refused to award treble damages due to the lack of a finding of any damages which were susceptible to trebling. Nor did the district court cite to any authority allowing considerations of any factor other than willfulness as a proper consideration for the exercise of the trier of fact's discretion.

*America, Inc. v. Gore*, 517 U.S. 559 (1996). Instead, the district court should have applied the due process standard applicable to *statutory damages* which requires the court to determine only whether "the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919).

Since the Court issued its decision in *Gore*, Circuit Courts, including the Sixth Circuit, have acknowledged the difference between these two standards and cautioned district courts against conflating them:

> The Supreme Court has not indicated whether *Gore* and *Campbell* apply to awards of *statutory* damages. **We know of no case invalidating such an award of statutory damages under Gore or Campbell, although we note that some courts have suggested in dicta that these precedents may apply to statutory-damage awards**.

> Regardless of the uncertainty regarding the application of *Gore* and *Campbell* to statutory-damage awards, we may review such awards under *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67, 40 S. Ct. 71, 64 L. Ed. 139 (1919), to ensure they comport with due process. **In such cases, we inquire whether the awards are "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."** *Id*. at 67.

> ****

> If the Supreme Court countenanced a 113:1 ratio in *Williams*, we cannot conclude that a 44:1 ratio is unacceptable here. We acknowledge the Supreme Court's preference for a lower punitive-to-compensatory ratio, as stated in *Campbell*, but emphasize that this case does not involve a punitive-damages award. **Until the Supreme Court applies *Campbell* to an**

16

> **award of statutory damages, we conclude that *Williams* controls, not *Campbell*, and accordingly reject *Panorama*'s due-process argument.**

*Zomba Enters. v. Panorama Records, Inc.,* 491 F.3d 574, 586-89 (6th Cir. 2007)(emphasis added, some citations omitted). See also *Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 70-71 (1st Cir. 2013) (rejecting application of *Gore* to statutory damage awards); *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 908 (8th Cir. 2012) (citing *Zomba*) (holding civil penalties functional equivalent of statutory damages); *Two Plus Two Publ'g, LLC v. Jacknames.com*, 572 F. App'x 466, 467 (9th Cir. 2014) ("The statutory damages awarded to Two Plus Two are not equivalent to punitive damages. Legislatures possess wide discretion to impose statutory damages, and only damages that are 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable' are prohibited.")

The district court erred in treating the statutory damages under RJA and MRCPA as punitive damages for purposes of the Due Process Clause of the U.S. Constitution. This was the precise error addressed by this Court in *Zomba*. In treating these two categories of damages as the same, the district court conflated the analysis of these constitutionally distinct forms of damages. The district court failed to apply the *Williams* test applicable here. Rather, the district court lumped together the anticipated statutory damage

award with the punitive damages, assuming that each would be subject to *Gore*. Relying on the wrong constitutional standard was an abuse of discretion.

Michigan law directly commands that courts treat awards under the RJA as cumulative and treat statutory damages under the MRCPA as a "civil penalty." The district court's constitutional analysis failed to apply the appropriate test for statutory damages. This Court should reverse and remand to the district court for an assessment of statutory damages using the appropriate factors required by controlling authority: whether "the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Williams*, 251 U.S. at 66-67.

## II.  The District Court Erroneously Refused To Consider And Give Weight To Factors And Evidence Supporting Ms. McPherson's Requested Rates For Her Attorneys.

### A.  Standard of Review

This Court reviews a district court's assessment of attorney fees under the abuse-of-discretion standard. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008); *Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001). "The primary concern in an attorney['s] fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to

attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791. The rate that is adequate to attract competent counsel for services requiring distinctive knowledge or specialized skill *is* the prevailing market rate, and awarding the prevailing market rate will not result in a windfall. *Pollinator Stewardship Council v. United States EPA*, No. 13-72346, 2017 U.S. App. LEXIS 13343, at *17 (9th Cir. June 27, 2017) (citing *Blum*, 465 U.S. at 897.)

A district court abuses its discretion if it relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard. *Imwalle,* 515 F.3d at 551; *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007.) A district court may also abuse its discretion by failing to adequately explain its reasoning or consider the parties' arguments. *Geier v. Sundquist*, 372 F.3d 784, 791–92 (6th Cir. 2004); *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986). "Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely

disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case." *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010). The recognition that the lodestar calculation should "produce[] reasonably predictable results," *Id.* at 552, underscores the object of these determinations – attracting competent counsel to represent plaintiffs. *Geier,* 372 F.3d at 791.

## B.  <u>Argument</u>

Where the fee applicant submits unopposed affidavits and evidence supporting the definition of market rate, controlling authority prohibits the district court from committing the precise error that it committed here by summarily rejecting that evidence in favor of past assessments by other courts.[6] *Doucette v. Comm'r of Soc. Sec.*, 13 F.4th 484, 491-92 (6th Cir.

---

[6] In light of the failure of Suburban to contest the fee application with evidence of its own, this Court would be within its purview to hold the requested fee established. *United States ex rel. Keshner v. Nursing Pers. Home Care*, 794 F.3d 232, 237 (2d Cir. 2015) (finding challenge to fees waived where party failed to present evidence in opposition to fee request); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1036 (3rd Cir.1996) ("Where, as here, the plaintiff has met his *prima facie* burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward."); *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) ("Once the plaintiff has made the *prima facie* showing with respect to the

2021). More importantly, courts must consider and give primary weight to affidavits, as compared to inferior and anecdotal evidence, like fee surveys or past fee awards:

> We agree with plaintiffs that the district courts' hourly-fee determinations were abuses of discretion. First, the courts placed undue weight on prior fee awards while dismissing—without explanation—plaintiffs' evidence of current market conditions. Although prior fee awards can "provide some inferential evidence of what a market rate is," they "do not set the prevailing market rate—only the market can do that." *B&G Mining, Inc. v. Dir., Office of Workers Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008). **District courts should therefore hesitate to give controlling weight to prior awards when presented with other credible evidence of the current market for legal services. That is especially true when, as here, the other evidence is unrefuted.**

*Doucette*, 13 F.4th at 491-492. (emphasis added, some citations omitted).

District courts, therefore, should give greater weight to affidavits of outside counsel rather than past fee decisions.

---

appropriate hourly rate, that rate may be contested, 'but only with appropriate record evidence. In the absence of such evidence, the plaintiff must be awarded attorneys' fees at her requested rate.'"); *Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir. 1992) (court was required to award an attorney's billing rate where defendant had submitted no evidence on fees); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996) (defendant's failure to submit evidence in opposition to rate operates as concession as to rate)*; "o" United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Velez v. Wynne*, 220 Fed. Appx. 512 (9th Cir. Jan. 29, 2007) ("'In the absence of opposing evidence, the proposed rates are presumed reasonable.'")

Similarly, a district court may rely *only* on appropriate record evidence. *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (party may contest appropriate hourly rate only "with appropriate record evidence"). Courts should not place undue weight on stale information without proof that it reflects prevailing market conditions at the time of the fee determination. *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) (finding district court abused its discretion in applying market rates in effect two years before the work performed); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (same); *Sussman v. Patterson*, 108 F.3d 1206, 1212 (10th Cir. 1997) (previous rates set by a court not dispositive where that rate was approved three years before rate determination). Additionally, in multi-year litigation, it is proper for a district court to award fees based on then-current rates to compensate for delays in payment. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 284 (1989); *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). In exercising its discretion to choose either current or historical rates, the district court must explain how the decision comports with the ultimate goal of awarding reasonable fees. *Gonter,* 510 F. 3d at 617.

In this case, the district court rejected Ms. McPherson's evidence and instead relied exclusively on a general Michigan fee survey and past decisions

which were themselves based on different evidence than that before the court. While prior orders on attorney fees and fee surveys may serve as inferential evidence of the market rate (*B&G Mining, Inc. v. Dir., OWCP*, 522 F.3d 657, 664 (6th Cir. 2008)), they "do not set the prevailing market rate — only the market can do that." *Maddox v. Lodestar Energy, Inc.*, 762 F. App'x 269, 272 (6th Cir. 2019). The district court evaluated factors which fell outside the rate analysis described in *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and failed to articulate findings required to support its rate determination.

In refusing Ms. McPherson's affidavits, the district court articulated no findings concerning the qualifications of Ms. McPherson's counsel, even though the district court was permitted to examine a number of factors in determining an appropriate rate:

- Skill (*Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)),

- Qualifications (*Glover v. Johnson,* 934 F.2d 703, 716 (6th Cir. 1991); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013)),

- Performance (*Dixie Fuel Co. v. Callahan*, 136 F. Supp. 2d 659, 666 (E.D. Ky. 2001)),

- Education (*B&G Mining, Inc. v. Dir., OWCP*, 522 F.3d 657, 665 (6th Cir. 2008)),

- Specialty Practice (*B&G Mining, Inc. v. Dir., OWCP*, 522 F.3d 657, 665 (6th Cir. 2008)),

- Complexity (*B&G Mining, Inc. v. Dir., OWCP*, 522 F.3d 657, 665 (6th Cir. 2008)),

- Actual experience (as opposed to simply time elapsed since admission to the bar) *(Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013)),

- Experience (*Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995),

- Reputation (*Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995),

- The attorney's customary billing rate (*Dowling v. Litton Loan Serv. LP*, 320 F. App'x 442, 447 (6th Cir. 2009)).

These factors were all appropriate for the district court's consideration of the applicable rate. The rates requested are far lower than many comparable rates,[7] including defense litigation rates, and certainly not unheard of. *Ballatore v. Comm'r of Soc. Sec.*, No. 11-15335, 2015 U.S. Dist. LEXIS 135402, at *26-28 (E.D. Mich. Aug. 5, 2015) ($616.83/hr approved, collecting cases inside and outside the district with rates up to $1,433.12/hr),

---

[7] Defense attorneys and law firms, which are paid directly from their clients and rarely have published fee opinions, have proven unwilling to offer this evidence to assist in supporting a plaintiff's fee request.

report and recommendation approved in *Ballatore v. Comm'r of Soc. Sec.*, Civil Action No. 11-CV-15335, 2015 U.S. Dist. LEXIS 134547, at *1-2 (E.D. Mich. Oct. 2, 2015). See also *Hardy v. Berryhill*, No. 18-10743, 2020 U.S. Dist. LEXIS 129178, at *7 (E.D. Mich. July 22, 2020) ("The Court finds that an award of $23,175 is reasonable, which equates to an effective hourly rate of $750. This fee will not result in an undeserved windfall, nor will the fee 'unduly erode' Plaintiff's past-due benefit award.")

Along with improperly deferring to past fee opinions, the district court limited its analysis to comparing Ms. McPherson's counsel to *each other*, rather than looking to the appropriate factors set forth above, including without limitation, whether the case fell within a unique or specialty practice.[8] The district court cited no authority for this approach which effectively rejected the mandate to evaluate the "skill, expertise and experience" of counsel. The court's misplaced analysis focused on whether Attorney Lyngklip had engaged skilled trial counsel and whether Attorney Keller had fewer years of time elapsed since being admitted to practice than

---

[8] The district court justified its award, in part, based on the fact that Attorney Keller conducted the lion's share of the trial. But, the record reflects that that Attorney Lyngklip conducted examination of nine of the thirteen witnesses presented at trial. Then the district court reduced Attorney Keller's rate solely based on comparison to his co-counsel's years of practice and cited to an Indiana civil rights case which reduced Mr. Keller's rate based solely on having less perceived experience than other civil rights practitioners.

Attorney Lyngklip. Entirely absent from the district court's analysis was any account of the extraordinary degree of success. Cf. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'") The district court simply ignored:

- ✓ The extraordinary degree of success. (*Jury Verdict*, R. 150, PageID. 3024-3026.)

- ✓ The market rate established by the Declarations of outside attorneys (*Declaration of McGuiness* [$900 per hour], R. 189-4, PageID.4899 at ¶22; *Declaration of Anderson* [$450-$500 per hour], R. 189-8, PageID. 4939 at ¶23; *Declaration of Liblang* [$450-$600 per hour], R. 189-5, PageID. 4908 at ¶22; *Declaration of Lehto* [$500 per hour] R. 189-7, PageID. 4935 at ¶17; *Declaration of Wilcox*, [$820 per hour] R. 189-12, PageID.4970 at ¶34; *Declaration of Bolos*, [$550 per hour] R. 189-14, PageID. 5024 at ¶22; *Declaration of Burdge* (median survey data for Michigan $595 in 2019 projected using CPI to $713.48 in 2024) R 189-6, PageID.4918 at ¶19).

- ✓ Mr. Lyngklip's then-current billing rate as established by paying clients (*Declaration of Lyngklip*, R. 189-3, PageID.4858-4859 at ¶¶23-29).

- ✓ Mr. Keller's then-current billing rate as established by paying clients (*Declaration of Keller*, R. 189-11, PageID.4955 at ¶ 30 and PageID.4956 at ¶35).

- ✓ The reasonableness of Mr. Lyngklip's rate (*Declaration of McGuiness*, R. 189-4, PageID. 4897 at ¶9; *Declaration of Anderson*, R. 189-8, PageID. 4937 at ¶8; *Declaration of Liblang*, R. 189-5, PageID.4901 at ¶8; *Declaration of Lehto*, R. 189-7, PageID.4934 at ¶6; *Declaration of Burdge* R. 189-6, PageID. 4915 at ¶14; *Declaration of Keller*, R. 189-9, PageID.4943 at ¶14).

- ✓ Mr. Lyngklip's 32 years of experience in a nationwide federal practice. (*Declaration of Lyngklip*, R. 189-3, PageID.4860-4864 at ¶¶31-39).

- ✓ Mr. Lyngklip's current and customary rates for federal litigation (*Declaration of Lyngklip*, R. 189-3, PageID.4858-4859 at ¶¶21-29).

- ✓ Mr. Lyngklip's specialized knowledge and skill in the area of auto finance fraud and spot delivery. *Declaration of Lyngklip*, R. 189-3, PageID. 4864-4888 at ¶¶39 and 58-69).

- ✓ Mr. Lyngklip's extensive history of public speaking. (*Declaration of Lyngklip*, R. 189-3, PageID.4871-4882 at ¶¶ 57).

- ✓ Awards (*Declaration of Lyngklip*, R. 189-3, PageID.4864-4865 at ¶¶46-48).

- ✓ Leadership positions within the consumer law community held by Attorney Lyngklip. (*Declaration of Lyngklip*, R. 189-3, PageID.4864 at ¶¶40-45).

- ✓ Legislative and judicial training provided by Attorney Lyngklip. (*Declaration of Lyngklip*, R. 189-3, PageID.4869-4871 at ¶¶55).

- ✓ Mr. Lyngklip's appearances before other public bodies (*Declaration of Lyngklip*, R. 189-3, PageID.4869-4871 at ¶¶56).

- ✓ Numerous publications by Mr. Lyngklip in the area of consumer law. (*Declaration of Lyngklip*, R. 189-3, PageID. 4865-4867 at ¶¶49-50).

- ✓ Declarations establishing Attorney Lyngklip's reputation and standing in the consumer law community and his unique position as a teacher and mentor. (*Declaration of Lyngklip*, R.

189-3, PageID. 4867-4868 at ¶¶51-54; *Declaration of Keller*, R. 189-9, PageID. 49414992 at ¶¶4-8; *Declaration of McGuinness*, R. 189-4, PageID. 4895-4897 at ¶2-7; *Declaration of Liblang*, R. 189-5, PageID. 4901 at ¶¶5-6 and 11-12; *Declaration of Lehto*, R. 189-7, PageID. 4934 at ¶¶2-4 and 8; *Declaration of Anderson*, R. 189-8,  PageID. 4936-4937 at ¶2-6; *Declaration of Burdge*, R. 189-6, PageID. 4913-4916 at ¶¶10 and 15).

- ✓ The Reasonableness of Mr. Keller's rate (*Declaration of Wilcox*, R. 189-12, PageID.4972 at ¶48; *Declaration of Bolos*, R. 189-14, PageID. 5024 at ¶22; *Declaration of Borison*, R. 189-13, PageID.5007 at ¶10; *Declaration of Burdge*  R 189-6, PageID. 4917 at ¶17; *Declaration of Lyngklip*, R. 189-15, PageID.5028 at ¶10).

- ✓ Declarations establishing Mr. Keller's reputation and standing in the consumer law community. (*Declaration of Wilcox*,  R. 189-12, PageID. 4971-4972 at ¶43-47; *Declaration of Bolos*, R. 189-14,  PageID.5024 at ¶22; *Declaration of Borison*, R. 189-13, PageID.5006 at ¶7; *Declaration of Burdge*  R 189-6, PageID.4913 PageID. 4915-4916 at ¶15; *Declaration of Lyngklip*, R. 189-15, PageID.5027 at ¶5).

- ✓ Unprecedented trial success and results by Mr. Keller in consumer litigation and 1983 litigation. (*Declaration of Keller*, R. 189-11, PageID.4949 at ¶6).

- ✓ Mr. Keller's specialized expertise and skill. (*Declaration of Keller*, R. 189-11, PageID.4949 at ¶5 and 7-16; *Declaration of Lyngklip*, R. 189-15, PageID. 5027 at ¶6; *Declaration of Bolos,* R. 189-14, PageID. 5023-5024 at ¶18-19; *Declaration of Borison*, R. 189-13, PageID.5006-5007 at ¶7-8; *Declaration of Wilcox*, R. 189-12, PageID.4972 at 47)).

- ✓ Mr. Keller's actual experience far beyond attorneys of similar 'years.' (see generally. (*Declaration of Borison*, R. 189-13, PageID.5007 at ¶8; *Bolos Declaration*, R. 189-14, PageID.5023 at ¶18; *Wilcox Declaration*, R. 189-12, PageID. 4972 ¶47; *Lyngklip Declaration* concerning Mr. Keller, R. 189-15 ¶6-8. *Declaration of Keller*, R. 189-11, PageID.4948-4959).

- ✓ Mr. Keller's experience as a trainer in consumer protection and trial practice (*Declaration of Keller*, R. 189-11, PageID.4952-495 at ¶20 and PageID.4955 at ¶26).

- ✓ The expertise and advocacy by Mr. Lyngklip in the area of spot delivery and auto financing. (*Declaration of Lyngklip*, R. 189-3 3, PageID.4882-4885 at ¶¶58-60).

- ✓ The scarcity of other attorneys in the area of spot delivery and auto financing that are experienced by consumers in the Eastern District of Michigan. (*Declaration of Lyngklip*, R. 189-3, PageID.4882-4885 at ¶¶58-60; *Declaration of Lehto* R.189-7, PageID. 4934-4935 at ¶7; *Declaration of Anderson*, R. 189-8, PageID. 4939 at ¶26; *Declaration of Liblang*, R. 189-5, PageID.4901 at ¶9; *Declaration of Burdge*, R. 189-6, PageID. 4913 at ¶p10).

- ✓ The national fee survey of consumer protection attorneys. (*NACA Fee Survey*, R. 189-17, R. 5042-5066.)

- ✓ The opinion testimony of Ronald Burdge, fee expert and author of the national consumer law fee survey outlining fees in this area of law. (*Declaration of Burdge* R.189-6, PageID. 4909-4933).

In its analysis, the district court failed to address any of the evidence supporting these factors or the arguments presented by Ms. McPherson.

Ms. McPherson's evidence supported her contention that her counsels' skill, expertise, and experience warranted the rates sought, if not more. At

core, Ms. McPherson argued that her attorneys were unique within the market with regard to their skill, qualifications, and experience – as well as their willingness to accept a case that no other attorneys within the district would consider accepting. *Glover v. Johnson*, 934 F.2d 703, 716 (6th Cir. 1991) (holding that there was no abuse of discretion when a district court awarded an hourly rate higher than the median rate, when the district court "found that counsels' qualifications, experience, and skill" in the relevant practice area merited a higher rate); *Waldo v. Consumers Energy Co.,* 726 F.3d 802, 822 (6th Cir. 2013); *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) ("An attorney may charge higher than the community's average if she possesses an unusual amount of skill, the ability to emphasize with the jury, investigative abilities, or other qualities which command a premium."); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 (7th Cir. 1982) ("we recognize that a particular attorney may have special skills ___or___ experience which raise the value of his time above the value of another attorney's time.") The evidence provided by Ms. McPherson addressed each of the factors permissible for consideration by the district court to support her central argument — namely, that Attorneys Lyngklip and Keller are uniquely qualified, including within their areas of practice. Unless fee applicants have confidence that their requests will be determined

by the evidence presented, courts cannot hope to fulfill the mandate of attracting competent counsel. *Geier,* 372 F.3d at 791; *Pollinator*, 2017 U.S. App. LEXIS 13343, at *17

The refusal of the district court to give consideration to qualifications of counsel, the lack of attorneys in the market and the degree of success runs afoul of the precise holding in *Doucette*, namely allowing past fee decisions to operate as precedent when the evidence in the case presented may vary significantly from that presented in past cases. Likewise, this approach allows evidentiary failings, legal errors, and unique facts in other cases not before the court to become embedded in future fee decisions. It is for that precise reason that this Court in *Doucette* — like other Circuit Courts — admonished against reliance on prior decisions where the applicant has presented evidence to establish that the requested rate is appropriate. *Doucette,* 13 F. 4th at 92 (treating prior awards as dispositive holds other plaintiffs' shortcomings against the applicant).[9]

---

[9] This Circuit's position stands in line with well-established law from other Circuits that have reversed trial courts relying on prior cases over affidavits supporting the fee request. *See, e.g.*, *Foley v. Lowell*, 948 F.2d 10, 20-21 (1st Cir. 1991); *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005) (observing that "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between" compensation available under a fee-shifting scheme and that which is available in the market); *Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 652 (3d Cir. 1986) (reversing district court's reliance on prior cases

The failure of the district court to articulate any reason beyond Mr. Lyngklip's retention of trial counsel and Mr. Keller's years of experience constituted plain error. *Caviness v. Comm'r of Soc. Sec.*, 681 F. App'x 453, 456 (6th Cir. 2017) ("While this is true, the district court's failure to explain why '$125 per hour is sufficient' in this case was an abuse of discretion."); *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 327 (5th Cir. 2023) ("[T]he district court did not explain *why* Ticket's rates were reasonable. An explanation is particularly necessary 'where, as here, [the] sanctions are substantial in amount.'"); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) ("But even this 'wide latitude' is not unlimited latitude, and the district court still bears the responsibility of justifying its

---

over affidavits); *E. Associated Coal Corp. v. Dir.,* OWCP, 724 F.3d 561, 573 (4th Cir. 2013) ("Notwithstanding this fact, we emphasize that prior fee awards are not controlling authority establishing a prevailing market rate for later cases."); *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990) ("When an attorney's customary billing rate is . . . within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed.") (citation omitted); *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 647 (7th Cir. 2011) (trial court erred in disregarding affidavits); *Roberts v. City & Cty. of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) (District court reversed; examining prior fee awards is not an acceptable substitute for considering the declarations submitted); *Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1255 (10th Cir. 1998) ("a district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it 'consistently grants.'*"); Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000) ("On the other hand, a court should hesitate to give controlling weight to prior awards, even though they may be relevant.").

conclusions." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010)); *see also Perdue v. Kenny A.*, 559 U.S. at 552;. *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("It is incumbent upon the district court to explain why it reduces plaintiff's lawyer's charged rate, and the explanation must be sufficient to allow for meaningful review").

The evidence presented established that no other attorneys within the district were likely to take on Ms. McPherson's "spot delivery" case. (*Declaration of Lyngklip*, R. 189-3, PageID.4882-4885 at ¶¶58-60; *Declaration of Lehto* R.189-7, PageID.4934-4935 at ¶7; *Declaration of Anderson*, R. 189-8, PageID. 4939 at ¶26; *Declaration of Liblang*, R. 189-5, PageID.4901 at ¶9; *Declaration of Burdge*, R. 189-6, PageID. 4913at ¶p10).

When – as in this case – the litigation requires specialized attorneys not generally available in the market area, district courts are free to look to a national market, an area of specialization market, or any other market they believe appropriate to fairly compensate attorneys in individual cases. *Louisville Black Police Officers Organization, Inc. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983). See also *Jeffboat, LLC, v. Dir., Off. of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009). Ms. McPherson proffered evidence on this specific point, which was never addressed by the district court. Specifically, Ms. McPherson's counsel provided their own

affidavits but also affidavits of other attorneys both locally and nationally. The refusal of the district court to consider this evidence without explanation constituted an abuse of discretion. Likewise, because Ms. McPherson established the lack of local attorneys who were competent and willing to prosecute this case through trial, the district court likewise erred in rejecting the national survey data and expert affidavit of that survey's author.

Compounding those errors, the district court should not have relied upon prior fee orders over Ms. McPherson's evidence to establish counsels' rate in this case. The fee awards establishing Mr. Lyngklip's rates cited by the district court[10] were all rendered several year years before the decision in this case (*Echols*, 2020; *Firneno*, 2017; *Tyson*, 2015;). Notably, none of those cases reflected the then-current fees requested by attorney Lyngklip. The most recent of these cases reflected an amount assessed four years before the decision at issue here (*Echols,* decided June 25, 2020, W.D. Mich. Case No. 20-1706, R. 55). None of the fee petitions in the cases cited by the district court included any outside attorney affidavits. (See *Echols v Express Auto, Inc.*, W.D. Mich. Case No. 19-00131, R. 46 file 2/3/20; *Tyson v Sterling Rental, Inc.*, E.D. Mich. Case No. 13-13490, R. 80 filed 5/25/15; *Firneno v*

---

[10] The district court referred to *Krueger* which had collected and analyzed awards)

*Radner Law Group. PLLC*, E.D. Mich. Case No. 13-cv-10135, R. 175; *Krueger v Experian Information Solutions, Inc.*, E.D. Mich. Case No. 19-10581, R. 75). Consequently, the past opinions relied upon by the district court here reflected stale decisions based on inferior evidence than was presented to the district court. The district court provided no analysis or reason why it chose to rely on fees from 2015-2020 rather than the current rate of Ms. McPherson's attorneys. Cf. *Gonter,* 510 F.3d at 618 (requiring that the court articulate any refusal to use current rates). To be clear, other Circuit Courts have found limited value in past awards that are more than two years old, as too stale to be relevant. *Camacho*, 523 F.3d at 981; *Sussman v. Patterson*, 108 F.3d 1206, 1212 (10th Cir. 1997) (previous rates not dispositive where that rate was approved three years before rate determination); *Dee v. Borough of Dunmore*, 548 F. App'x 58, 63 (3d Cir. 2013).

As to Mr. Keller, the affidavits provided establish that his skill and experience are widely known among the consumer protection bar nationally, and his unparalleled results speak for themselves. Refusing to compensate an attorney with superior qualities and proven abilities not only undermines the salutary purposes of congressional and legislative intent but threatens the willingness of any attorneys to accept specialized cases because they could go elsewhere and earn higher rates with less uncertainty, likely with

far less of a fight than those routinely presented by powerful and resourceful consumer industry defendants. The district court failed to explain how an Indiana civil rights case ($1M+ verdict), cited alone and on different evidence than presented here, established Mr. Keller's market rate, whether inside or outside the Eastern District of Michigan. Cf. *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) ("An attorney may charge higher than the community's average if she possesses an unusual amount of skill, the ability to emphasize with the jury, investigative abilities, or other qualities which command a premium.") Moreover, courts should not discriminate against talented counsel by reducing their pay based on a limited comparison of the "years of experience," regularly gauged by a false-equivalency standard — time elapsed since admission to the bar —[11] as opposed to actual ability and skill. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d at 767 ("we recognize that a particular attorney may have special skills *or*

---

[11] *Russell v. Foglio*, 160 Cal. App. 4th 653, 662, 73 Cal. Rptr. 3d 87, 93 (2008) (recognizing attorney brought far more extensive trial experience than an average junior associate at a law firm would have had, including in court. The demonstrated level of performance by counsel justified the hourly fee level.) See also *O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1085 (D.N.M. 2018)(awarding enhanced rate to attorney who demonstrated "unique" skills despite only having 11 years of experience and remarking that such a rate is ordinarily reserved to lawyers with experience in the range of fifteen to twenty years); *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:08-CV-605, 2010 U.S. Dist. LEXIS 42357, at *14 (N.D. Ohio Apr. 30, 2010).

experience which raise the value of his time above the value of another attorney's time."). See also *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1190-91 (N.D. Iowa 2003) (with no shortage of "litigators," true trial lawyers are becoming an endangered species. While there are many terrific litigators, there are far fewer terrific trial lawyers; an attorney in this very select and prestigious inner circle deserves to be compensated accordingly).

As to Attorney Bolos, the district court did not make any particularized findings as to an appropriate market rate. Two months after the district court entered its ruling setting the rate for Ms. Bolos at $300 per hour, an Eastern District of Michigan Bankruptcy Court found that the relevant market supported rates between $800-$1,000 per hour for similar litigation and appropriately assessing a much higher rate for Ms. Bolos. *In Re Walker*, E.D. Mich. BK Case No. 22-31612, R. 49, 2024 Bankr. LEXIS 2125 (Sep. 12, 2024). Consequently, the court there had no trouble in setting Ms. Bolo's rate at $650 per hour and $725 for her senior partner in routine Fair Credit Reporting litigation before that court. This ruling highlights the precise concern voiced in *Perdue* that widely disparate result may appear to be more the product of subjective opinion than evidence. The result also underscores problems which the lodestar method is intended to avoid. *Perdue,* 559 U.S. at 552.

Lastly, the district court's reliance on the MBS survey was similarly misplaced. The MBS facially included data of non-private practitioners, and its data were already two years out of date when the fees in this case were assessed. That survey included several factors rendering its use inappropriate. It reflected market conditions during 2022 and was tabulated in 2023. (See Rec. 193-3 at p. 4-5). Similarly, the survey itself fails to discriminate between rates within the local jurisdiction (the Eastern District). Additionally, the survey disclaimers reflect that the response includes information from attorneys who are not engaged in private practice.[12] Thus, this information did not reflect current conditions within the relevant market and was of questionable value given its sampling. More importantly, the lack of any detail considering reputation, skill, and experience of the participants renders the MBS immaterial. Its use as a measure of Ms. McPherson's counsel operates as a blunt axe whereas the standard for the evidence calls for a scalpel. Even assuming the district court appropriately relied on the MBS, the declaration of Ronald Burdge established that the district court failed to consider other factors from that

_____

[12] The survey notes that only 45% of the membership surveyed are engaged in the private practice of law. The remainder of the surveyed attorneys are not private practitioners. The survey failed to identify the response rates for private versus non-private practitioners.

survey that would have supported the requested rate. (*Declaration of Burdge*, R. 189-6, PageID.4914-4917 at ¶¶13-17.) On its face, the MBS is of little – if any – value given the specific evidence presented to the district court concerning market conditions from practitioners with knowledge of the practice.

Given the evidence and arguments below, the district court abused its discretion in not giving due weight to the evidence presented by Ms. McPherson. In reviewing fee applications, district courts must rely upon evidence of the parties. To the extent that the district court relied on the past decisions over the overwhelming evidence presented by Ms. McPherson, the district court effectively "set[] the amount of evidence required at a nearly unattainable level," *People Who Care v. Rockford Bd. Of Educ.*, 90 F.3d 1307, 1311 (7th Cir. 1996). In reviewing the evidence, the district court was required to articulate its reasons for rejecting that unopposed evidence. *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) ("At times, we have found an abuse of discretion where a district court fails to explain its reasoning adequately or to consider the competing arguments of the parties.") (citing *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986)). Here, counsel for Ms. McPherson set forth evidence and arguments establishing their unique skills and experience that warranted the requested

rate (*Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 631 (6th Cir. 2020)) and proffered evidence and analysis that the district court's past awards have not been "sufficient to encourage competent representation" in cases of this type. *Gonter*, 510 F.3d at 618. Ms. McPherson presented sufficient evidence to support her contention that Attorneys Lyngklip and Keller possessed unique skills that warranted the requested rate and placed them within the high end of the rates in the applicable market. The district court erred in rejecting and refusing to consider this evidence.

This Court should reverse the fee decision below and remand for further proceedings.

## CONCLUSION

The district court applied the incorrect legal standards to its statutory and constitutional analysis of the statutory damages under RJA and MRCPA. This Court should reverse and remand with instructions to assess statutory damages under the correct legal standards set forth in Michigan law and the Constitution.

The district court erred in setting attorneys' fees by refusing to consider Ms. McPherson's abundant evidence and instead relying on stale decisions. This Court should reverse the district court and remand with instructions to give proper consideration to the evidence presented.

42

Respectfully Submitted,


By: /s/ *Ian B. Lyngklip*
Ian B. Lyngklip P47173
**LYNGKLIP & ASSOCIATES,**
**CONSUMER LAW CENTER, PLC**
*Attorney for Appellant Tina McPherson*
13751 W. 11 Mile Road
Oak Park, MI 48237
Ian@ConsumerLawyers.com
(248) 208-8864

## Certificate of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), contains 9,064 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Georgia 14-point font.

Dated: November 12, 2024

/s/ *Ian B. Lyngklip*
Ian B. Lyngklip P47173
Attorney for Appellant/Cross-Appellee

## Certificate of Service

The undersigned hereby certifies that on November 12, 2024, an electronic copy of the Brief of Appellant/Cross-Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

/s/ *Ian B. Lyngklip*
Ian B. Lyngklip

# ADDENDUM

## DESIGNATION OF DOCUMENTS RELEVANT TO APPEAL

R. 1      Complaint, R.1................................................PageID. 1 - 37

R. 91     Response to Motion for Summary Judgment ..... PageID. 1272-1301

R.91-1    Index ................................................ PageID. 1303-1304

R.91-2    Response To Suburban's Statement of Facts ...... PageID.1306-1343

R.91-3    Declaration of Tina McPherson ..........................PageID.1344-1347

R.91-4    Declaration of Counsel .................................... PageID.1348-13499

R.91-5    Disclosed TILA Calculations ........................................PageID.1350

R.91-6    Actual TILA Calculation ................................................ PageID.1351

R.91-7    Deposition of Melissa Garner..............................PageID.1352-1583

R.91-8    Deposition of Mina Boles ....................................PageID.1584-1672

R.91-9    Deposition of Suburban Under Rule 30(b)(6) ..... PageID.1673-1732

R.91-10   Deposition of Secretary of State
          Under Rule 30(b)(6) ............................................PageID.1733-1784

R. 92     Index ................................................ PageID. 1785-1787

R.92-1    Deposition of Gil Van Over ................................ PageID.1788-1838

R.92-2    Deposition of Matt Ferney .................................PageID.1840-1888

R.92-3    Response to Plaintiff's First Interrogatories ....... PageID.1889-1896

R.92-4    Response to Plaintiff's First
          Request for Production ...................................... PageID.1897-1908

R.92-5    Response to Plaintiff's
          Second Request for Production............................PageID.1909-1912

R.92-6    Murray Brown Letter 1989............................................ PageID.1913

R.92-7    Bulletin 2013-08-CF ............................................PageID.1914-1915

R.92-8    Secretary of State 2013 Dealer Manual ................ PageID.1916-1938

R.92-9    Consumer Information 4-11-00 ....................................PageID.1939

R.92-10   Form TR-209 ................................................ PageID.1940

R.93      Index ................................................PageID.1941-1943

R.93-1    Form TR-210 ................................................ PageID.1941

R.93-2   Suburban's Application for
         Installment Seller's License ..........................................PageID.1945

R.93-3   Suburban's Application for
         Installment Seller's License ............................... PageID.1948-1950

R.93-4   Retail Installment Sales Contract (RISC)............. PageID.1951-1954

R. 93-5  RD-108 ......................................................................PageID.1955

R.93-6   Route One Credit Application .............................PageID.1956-1957

R.93-7   Certificate of Title..................................................PageID.1958-1959

R.93-8   Reassignment of Title..........................................PageID.1960-1961

R.93-9   Ally Conditional Approval ..........................................PageID. 1962

R.93-10  Ally Financial Dealer
         Agreement with Suburban .................................. PageID. 1963-1981

R.94     Index ................................................................. PageID. 1982-1984

R.94-1   Trans Union Subscriber Agreement...................PageID. 1985-2006

R.94-2   Experian Subscriber Agreement ........................ PageID. 2008-2010

R.94-3   Equifax Subscriber Agreement ..........................PageID. 2011-2014

R.94-4   ECOA Policy Excerpts ........................................ PageID. 2015-2027

R.94-5   Dort Conditional Approval..........................................PageID. 2028

R.94-6   Proposed Dort Retail Installment Contract ...... PageID. 2029-2032

R.94-7   Trans Union Consumer
         Disclosure (Redacted) ....................................... PageID. 2033-2036

R.94-8   Repossession Order.............................................PageID. 2037-2038

R.94-9   Disclaimer of Lien by Ally Financial .......................... PageID. 2039

R.94-10  Repossession Text .....................................................PageID. 2040

R.95     Index .................................................................PageID. 2041-2043

R.95-1   Certified Title History ....................................... PageID. 2044-2065

R.95-2   Transcription of Recording
         with Ally Financial ..............................................PageID.2066-2075

R.95-3   Transcription of Recording with Melissa Garner........ PageID. 2076

R.95-4   Transcript of Call with Mark Brown....................PageID.2077-2780

R.95-5   Padilla Repossession Order......................................... PageID. 2081

R.95-6    Porter Repossession Order...........................................PageID.2082

R.95-7    Dead Deal #1 Excerpted ............................................ PageID. 2083

R. 150    Jury Verdict.................................................PageID. 3024 - 3026

R. 155    Motion for Enhanced Damages.......................PageID. 3035 - 3059

R. 157    Trial Transcript Vol. 1 ...................................... PageID.   3174 - 3373

R. 158    Trial Transcript Vol. 2 .....................................PageID. 3374 - 2547

R. 159    Trial Transcript Vol. 3 ...................................... PageID. 3548 - 3778

R. 160    Trial Transcript Vol. 3 .....................................PageID.   3779 - 3901

R. 161    Response to Motion for Enhanced Damages ... PageID. 3902 - 3915

R. 173    Opinion and Order Denying
Motion for Enhanced Damages....................... PageID.   4004 - 4017

R. 174    Judgment .................................................. PageID. 4018

R. 175    Motion for New Trial and Remittitur................PageID. 4019- 4048

R. 188    Response to Motion for
New Trial and Remittitur .................................. PageID. 4127 - 4153

R. 189    Motion for Attorney's Fees ................................ PageID. 4154 - 4181

R. 189-1 Index to Motin for Attorney's Fees.................... PageID. 4182-4183

R. 189-2 Lyngklip & Associates Statement of Fees........... PageID. 4184-4853

R. 189-3 Declaration of Ian Lyngklip
In Support of Attorney's Fees............................PageID. 4854-4894

R. 189-4 Declaration of Drew McGuiness
In of Ian Lyngklip............................................. PageID. 4895-4899

R. 189-5 Declaration of Dani Liblang
In Support of Ian Lyngklip................................PageID. 4900-4908

R. 189-6 Declaration of Ron Burdge
In Support of Lyngklip & Keller ........................PageID. 4909-4933

R. 189-7 Declaration of Steve Lehto
Support of Ian Lyngklip ....................................PageID. 4934-4935

R. 189-8 Declaration of Rex Anderson
In Support of Ian Lyngklip.................................PageID. 4936-4939

R. 189-9  Declaration of Duran Keller

      In Support of Ian Lyngklip ................................. PageID. 4941-4943

R. 189-10  Keller Law Statement of Fees .......................... PageID. 4944-4947

R. 189-11  Declaration of Duran Keller

      In Support of Attorney's Fees ............................ PageID. 4948-4959

R. 189-12  Declaration of Ron Wilcox

      In Support of Duran Keller .............................. PageID. 4960-5003

R. 189-13  Declaration of Scott Borison

      In Support of Duran Keller ............................... PageID. 5005-5010

R. 189-14  Declaration of Sylvia Bolos

      In Support of Duran Keller ............................... PageID. 5011-5025

R. 189-15  Declaration of Ian Lyngklip

      In Support of Duran Keller .............................. PageID. 5026-5028

R. 189-16  Michigan Attorney Fee Survey ........................ PageID. 5029-5041

R. 189-17  NACA Fee Survey ............................................ PageID. 5042-5066

R. 189-18  State Bar of Michigan

      Attorney Demographics .................................... PageID. 5067-5068

R. 189-19  State Bar of Michigan

      Consumer Law Section Listing .......................... PageID. 5069-5070

R. 189-20  NACA Michigan Attorney Directory ............... PageID. 5071-5080

R. 189-21  Statement of Non-Taxable

      Expenses of Counsel ......................................... PageID. 5081-5160

R. 189-22  Declaration of Brandy Moore ........................ PageID. 5161 - 5162

R. 193  Response to Motion for Attorney's Fees .......... PageID. 5166 – 5231

R. 193-1  Index of Exhibits ........................................... PageID. 5191

R. 193-2  2020 Economics of Law Survey Results ........... PageID. 5192-5206

R. 193-3  2023 Economics of Law Survey Results ........... PageID. 5207-5220

R. 193-4  Emails ............................................................ PageID. 5221-5222

R. 193-5  Trial Emails .................................................... PageID. 5223-5224

R. 193-6  Hours ............................................................. PageID. 5225-5226

R. 193-7  JTFO Hours..........................................................PageID. 5227-5228

R. 193-8  Receivership Hours...........................................PageID. 5229-5230

R. 193-9  Charges Related to Ferney/T&H Towing...........PageID. 5231-5233

R. 198    Opinion and Order Denying
          Motion for New Trial and Remittitur................PageID.  5274-5285

R. 199    Opinion and Order Granting In Part
          Motion for Attorney's Fees................................PageID. 5286- 5297

R. 200    Amended Judgment ......................................................PageID. 5298

R. 211    Transcript of Hearing on
          Motion for Enhanced Damages........................PageID. 5489 - 5525

R. 218    Transcript of Hearing on

          Motion for Attorney's Fees...............................PageID. 5489 - 5525

R. 201    Notice of Appeal ................................................PageID. 5299- 5300